**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

PETER NOE,

     Plaintiff,

v.

UNITED STATES OF AMERICA,

     Defendant.

---

### COMPLAINT

---

Plaintiff, Peter Noe, by and through his attorneys, David Lane and Liana Orshan of KILLMER LANE, LLP, hereby brings this Complaint and alleges as follows:

### I.     INTRODUCTION

1. Starting at the end of 2020 and lasting through August 14, 2023, Peter Noe, a federal inmate housed at the United States Penitentiary ADMAX ("ADX") under the custody of the Bureau of Prisons ("BOP"), received severely inadequate and delayed treatment for disc herniation and degeneration in his spine, leading to extreme pain and significant damage to Mr. Noe's health.

2. Because of the unreasonable and negligent acts and omissions of individuals employed by the BOP, Mr. Noe has had to endure appalling pain and suffering.

3. This action is brought under the Federal Tort Claims Act to recover damages for the pain and suffering BOP's negligence caused Mr. Noe.

### II.     PARTIES

4. Plaintiff Peter Noe is a citizen of the United States and was at all times relevant to

the subject matter of this Complaint a resident of, and domiciled in, the State of Colorado.

5.      Plaintiff Noe (inmate # 10849-041) was and is currently an inmate of the Bureau of Prisons ("BOP") at United States Penitentiary ADMAX ("ADX"), in Florence, Colorado, during the events giving rise to this Complaint.

6.       The Federal Bureau of Prisons is a United States agency and subdivision of the United States Department of Justice. The BOP is responsible for the administration of the federal prison system, including ADX, and management and care of all BOP inmates, including Mr. Noe.

## III.    JURISDICTION AND VENUE

7.      This action arises under and is brought pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*

8.      Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 & 1346(b).

9.      Venue is proper in the District of Colorado pursuant to 28 U.S.C. §§ 1391(b) & 1402(b). All of the acts and omissions alleged herein occurred within the State of Colorado.

10.      The administrative prerequisites to bring this action under 28 U.S.C. § 2675 and 28 U.S.C. § 2401(b) have been satisfied. Plaintiff presented his FTCA claim and supporting materials to the Federal Bureau of Prisons, and the Department of Justice denied Plaintiff's claim via letter from Regional Counsel Mary Noland, subject "Tort Claim TRT-NCR-2025-01340," dated February 5, 2025.

## IV.    STATEMENT OF FACTS

### *ADX severely neglected Mr. Noe's medical needs, with dire consequences for Mr. Noe's health.*

11.      Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth therein.

12.     Starting at the end of 2020 and continuing through August 14, 2023, BOP

provided severely inadequate and delayed treatment for disc herniation and degeneration and

nerve impingement in Mr. Noe's spine, leading to extreme pain and significant damage to his

health.

13.     Plaintiff previously filed two FTCA actions based on this sequence of events, D.

Colo. Case Nos. 21-cv-03340 and 23-cv-00695 (consolidated), and Plaintiff explicitly adopts by

reference under Fed. R. Civ. P. 10(c) the statements made in those complaints herein.

14.     On or about August 4, 2021, Mr. Noe saw BOP provider Dr. Oba for the first time

since his complaints started at the end of 2020. Mr. Noe explained to Dr. Oba that he had

throbbing and aching pain in his lower stomach and testicles and that he had intermittent

episodes since late 2020 of difficulty with urination. Dr. Oba diagnosed Mr. Noe with

epididymitis, which is inflammation of part of the testicle, and around the same time also

diagnosed him with a urinary tract infection.

15.     Dr. Oba prescribed a two-week course of antibiotics; when Mr. Noe's symptoms

did not resolve, Dr. Oba prescribed another course.

16.     On or around August 23, 2021, Dr. Oba placed an order for Mr. Noe to be

evaluated by a urologist.

17.     Utterly unreasonably and with reckless disregard to Mr. Noe's worsening medical

condition, BOP did not provide Mr. Noe with a urologist evaluation until late December 2021.

Dr. Oba approved the delay in the consult, despite the obvious signs Mr. Noe was exhibiting of a

serious medical condition.

18.     While waiting to see the urologist, Mr. Noe's condition worsened exponentially.

Although his urinary symptoms mostly resolved, the unbearable and extreme pain in Mr. Noe's

stomach and testicles continued. ADX medical providers, including Dr. Oba and PA Seroski, refused to provide him with any pain medication.

19.    Mr. Noe repeatedly complained of these symptoms, the denial of pain medication, and the delay in seeing the urologist—often explaining that his pain was so bad he believed it was an "emergency"—to the medical staff at ADX ("Medical") and to BOP through oral communication, requests for sick call, and requests for administrative remedies and appeals of the denial of such including but not limited to on August 22, 2021; August 31, 2021; September 2, 2021;  September 15, 2021; September 23, 2021; September 24, 2021; October 8, 2021; October 7, 2021; October 17, 2021; October 27, 2021; November 5, 2021; November 8, 2021; November 17, 2021; November 19, 2021; November 23, 2021; November 30, 2021; December 8, 2021; December 10, 2021; December 13, 2021; December 20, 2021; and December 21, 2021.

20.    Starting in or about mid-October 2021, Mr. Noe included in his complaints and requests informed Medical that he was also experiencing sharp/burning and constant pain in his lower back, hip, leg, and foot and numbness in his leg and foot. The pain worsened until it became extreme, and he described it as feeling like he had "broken glass in [his] lower back right side." He explained that he could not sleep and could barely walk.

21.    BOP unreasonably failed to provide him treatment for these symptoms.

22.    During this time period, Mr. Noe also reported to Medical that his urinary symptoms reoccurred, and he got sick again with fever, weakness, chills, and headache.

23.    PA Seroski was aware of Mr. Noe's numerous complaints and symptoms, yet she refused to provide him any pain management or attempt to further diagnose him using different procedures.

24.    The urologist finally evaluated Mr. Noe on December 23, 2021. Given Mr. Noe's

4

complaints of back pain and leg pain and numbness, combined with his urinary issues and the

urologist's assessment that Mr. Noe had poor sphincter tone, the urologist immediately suspected

what Dr. Oba and PA Seroski should have realized months earlier, which was that Mr. Noe's

issues likely all stemmed from a neurological source.

25.     The urologist recommended a complete assessment of the urinary tract, including

cystoscopy and uroflowmetry, as well as an MRI scan due to the possibility of a neurological

etiology.

26.     Mr. Noe's urinary tract tests were normal.

27.     On January 11, 2022, PA Seroski finally prescribed pain medication for Mr.

Noe's back pain after he repeatedly complained about extreme and constant back and stomach

pain and leg numbness in late December 2021 and early January 2022. She prescribed

meloxicam, which is similar to ibuprofen.

28.     Mr. Noe waited two months for the MRI scan, which occurred on February 27,

2022. However, Dr. Oba unreasonably ordered a scan of the wrong area of Mr. Noe's body, his

abdomen, despite that he should have known based on the urologist's notes and Mr. Noe's

symptoms that it was his back that needed to be scanned.

29.     Mr. Noe informed Medical that the pain medication was not working at least on

January 27, 2022, and February 7, 2022. Yet Dr. Oba unreasonably delayed in prescribing

another pain medication, naproxen, until February 18, 2022.

30.     BOP delayed in performing the correct MRI scan on Mr. Noe's back until June

12, 2022, with Dr. Oba and Ms. Seroski not reviewing the results until June 22 and June 23,

2022, respectively. During this further period of delay, and to the incomplete effectiveness of the

pain medication, Mr. Noe repeatedly continued to complain to Medical and BOP of extreme and

worsening pain in his stomach, back, and testicles, as well as numbness and pain in his leg,
including but not limited to March 9, 2022, April 12, 2022; April 15, 2022; April 19, 2022; April
20, 2022; May 4, 2022; June 21, 2022; June 22, 2022.

31.    After months of being on ineffective pain medication and complaining of such, of
which Dr. Oba and PA Seroski were aware, Dr. Oba prescribed Mr. Noe prednisone, which
helped alleviate the pain somewhat but not completely.

32.    The June 12, 2022, MRI scan showed that Mr. Noe had "right lateral L4-L5 disc
herniation which results in mild-moderate foraminal stenosis and contacts the right L4 nerve
root" and "L5-S1 disc degeneration asymmetric to the right resulting in moderate bilateral
foraminal stenosis and contacting the right L5 nerve root."

33.    The disc herniation and disc degeneration were the cause of all Mr. Noe's
symptoms, including his urinary issues, extreme pain, and extremity numbness.

34.    Despite finally knowing the correct source of Mr. Noe's issues, one-and-a-half
years after their onset, BOP has still failed to provide adequate treatment.

35.    Dr. Oba reviewed the results and placed a consultation for pain management, but
a consultation to neurosurgery was not placed until late September 2022.

36.    In approximately December 2022, Mr. Noe was prescribed gabapentin, which is a
medication targeted to treat the nerve pain he suffers. Starting at the latest in July 2022, Mr. Noe
repeatedly informed Medical and BOP that the other medication he was prescribed was not
effective in treating his pain, yet he did not receive the correct medication for months.

37.    From July 2022 (and before, as detailed in the previous actions) through
December 2022, BOP did not provide Mr. Noe with effective pain treatment for his symptoms

6

related to his back condition, despite his repeated complaints that the medication prescribed before December 2022 was not effective in treating the pain.

38. The medical care provided by BOP was inadequate and excessively delayed, causing Mr. Noe unnecessary significant pain, suffering, and risk of serious injury.

39. Once the MRI of Mr. Noe's lumbar spine was first obtained, the attempts at pain management that were undertaken provided him with minimal relief. The pain management plan included an epidural steroid injection that was also excessively delayed as it took nearly 5 months for him to receive this treatment (November 9, 2022), and it was not effective.

40. After an additional month passed, Mr. Noe was evaluated by neurosurgery, and it was determined that the appropriate treatment was spinal fusion and decompression. Mr. Noe did not see the neurosurgeon until December 16, 2022, which was six months after the MRI, an unreasonable delay.

41. BOP did not provide Mr. Noe with the necessary fusion and decompression procedure until August 14, 2023, nearly two years after his initial pain complaints. The surgery unreasonably did not move forward in an expedited manner, despite the excessive delays in diagnosis.

42. Meanwhile, Mr. Noe's pain continued to worsen, and a repeat MRI on May 17, 2023, showed progression of his lumbar disc disease that indicated further impingement on the nerve roots.

43. Had Mr. Noe received the recommended neurosurgical intervention in a timely manner, he likely would not have had certain disease progression and suffered significant and unnecessary pain.

44. The clinical providers of the BOP engaged in Mr. Noe's provision of care thus

failed over an extended period, and in various ways, to meet a reasonable standard of care for treating his condition.

### *Despite being aware that BOP was not meeting Mr. Noe's medical needs, BOP employees unreasonably failed to timely provide him adequate healthcare.*

45. BOP is responsible for the care of all federal detainees within its custody, including providing adequate medical care.

46. Given Mr. Noe's repeated complaints and symptoms, it was patently unreasonable for BOP to significantly delay his care in numerous ways.

47. Dr. Oba did not personally evaluate Mr. Noe until August 2021, despite his first complaint of urinary issues in December 2020 and his repeated and numerous complaints about the issue persisting, plus pain developing in his stomach and testicles.

48. The urology consult was ordered in August 2021, but BOP, with Dr. Oba's explicit approval, pushed back the appointment so that it did not occur until late December, even though Mr. Noe was still having serious, and in fact worsening, symptoms.

49. Indeed, once Mr. Noe started complaining of back pain in October 2021, Dr. Oba and PA Seroski reasonably should have suspected that his urinary issues were likely neurological in nature, and they should have attempted to provide treatment in this respect.

50. Then, once Mr. Noe saw the urologist in December 2021, who noted he was concerned that the voiding issue was neurological and recommended an MRI scan, BOP unreasonably failed to provide the correct MRI scan for six months, during which time Mr. Noe suffered in extreme pain.

51. It took over one year for any pain medication to be prescribed to Mr. Noe, which was meloxicam. Under the applicable standard of care, not only should Dr. Oba or PA Seroski

have prescribed meloxicam much earlier, they should have immediately prescribed a different pain management drug after a week when the Meloxicam was not effective.

52.     Then, it was unreasonable for Dr. Oba to prescribe naproxen (Aleve), which was basically a baby step in the pain management process, rather than prescribing the prednisone and targeted-nerve-pain medication like gabapentin immediately after Mr. Noe saw the urologist.

53.     Mr. Noe thus suffered over a year without even the most basic attempt at pain management, and then was subject to ineffective pain management for many more months.

54.     After the MRI scan's significant findings, including nerve root pressure, it was unreasonable for BOP to delay Mr. Noe's evaluation by a neurologist for six months.

55.     Then, it took another eight months after the neurologist's surgery recommendation for BOP to provide Mr. Noe with the necessary surgery, yet another unreasonable delay that caused Mr. Noe unnecessary pain and suffering.

## V.     CLAIM FOR RELIEF

### CLAIM FOR RELIEF
### Federal Tort Claims Act – Negligence

56.     Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

57.     All BOP employees whose actions or inactions are the subject of this action, including but not limited to Dr. Oba and PA Seroski, were acting within the scope of their employment in their actions and inactions at all times relevant to this Complaint.

58.     Defendant United States is vicariously liable for the acts and omissions of the BOP employees that were committed within the course and scope of their employment.

59. Because BOP voluntarily assumed custody of Mr. Noe under circumstances such as to deprive him of his normal opportunities to obtain medical care and treatment, BOP owed Mr. Noe a duty of care to provide for his medical needs.

60. BOP's duty to provide medical care and treatment to Mr. Noe was non-delegable. The fact that BOP confided the duty of providing care to Mr. Noe to BOP staff, employees, and agents did not relieve BOP of its duty of care to Mr. Noe.

61. Because Mr. Noe was dependent on and under the control of BOP and the staff at the ADX, Mr. Noe had a special relationship with BOP and its employees such that BOP and these individuals had a duty to exercise reasonable care in protecting Mr. Noe's health and safety.

62. BOP and its employees breached their common law duties of care to Mr. Noe by, inter alia providing improper and inadequate treatment for his disc herniation and degeneration, including failing to develop and implement timely and consistent care plans; failing to properly assess and reassess Mr. Noe's condition; failing to timely and adequately respond to changes in Mr. Noe's condition; failing to adequately and timely obtain tests, diagnoses, and treatments for Mr. Noe's condition; failing to timely provide appropriate pain management for Mr. Noe; and failing to ensure that the facility could meet the overall needs of Mr. Noe.

63. Because BOP and its employees were on notice that Mr. Noe was not receiving adequate medical care and treatment, and thus it was, or should have been to an ordinarily prudent person in the same or similar position, reasonably apparent that that they needed to take action to protect Mr. Noe from the harm or reasonably foreseeable risk of harm caused by the failure to adequately treat Mr. Noe, they had a duty to take necessary action to protect Mr. Noe from such harm.

10

64.    By failing to provide and/or to direct those under their supervision and control to provide adequate treatment to Mr. Noe, BOP and its employees failed to act in the same manner as a reasonably careful and prudent individual would have in treating or caring for Mr. Noe, and thus breached their duty of care to Mr. Noe to provide adequate medical care.

65.    But for the acts and omissions of BOP and BOP employees, Mr. Noe would not have been suffered the injuries that he did, including, but not limited to, years of extreme pain and worsening and deterioration of his disc condition, and such harm was a natural and foreseeable consequence of BOP's and its employees' acts and omissions.

66.    BOP and its employees' failure to reasonably ensure Mr. Noe received adequate medical care despite their ability and authority to do so was a substantial factor in causing Mr. Noe's harm, and it was reasonably foreseeable to a reasonable person in the position of BOP and its employees that such failure would cause the harm or a similar harm that Mr. Noe suffered and is suffering.

67.    As a direct and proximate cause and consequence of the BOP and its employees' conduct, Mr. Noe has suffered and continues to suffer severe injuries and damage to his health and extreme physical and mental pain and suffering.

68.    Although BOP and the BOP employees knew or should have known that Mr. Noe's health and safety was at risk due to the failure to provide him adequate medical care, BOP and its employees failed to fulfill their duty to ensure that Mr. Noe's medical needs were met, and such failure negligently and recklessly disregarded the foreseeable risk of harm to Mr. Noe.

69.    BOP is vicariously liable for the acts and omissions of employees, staff, or agents, including the nurses and EMTs who treated Mr. Noe, because BOP had the right to control their

actions and their negligent acts were committed within the course and scope of their employment.

70.    Negligent acts for which BOP is vicariously liable include, but are not limited to, the failure of the ADX medical staff who provided medical care to Mr. Noe to timely and adequately ensure that Mr. Noe's medical needs were being met, thus breaching their duty to Mr. Noe to exercise the degree of care, skill, caution, diligence, and foresight exercised by and expected of medical personnel in similar situations, and directly and proximately causing Mr. Noe harm and suffering.

71.     As a result of BOP and its employees' conduct, Plaintiff has suffered and continues to suffer economic and noneconomic damages, losses, and injuries, in an amount to be determined at trial. General and compensatory damages to which Plaintiff is entitled include, inter alia, pain and suffering, impairment in the quality of life, upset, anger, depression, and all other damages as allowed under law.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, in an amount to be determined following a trial, and award him all relief allowed by law, including, but not limited to, the following:

a.    Appropriate and equitable relief including but not limited to declaratory and injunctive remedies;

b.    Compensatory damages, including, but not limited to, those for past and future pecuniary and non-pecuniary losses, emotional distress, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses;

c.        Pre-judgment and post-judgment interest at the highest lawful rate on all claims as

allowed by law;

d.        Attorney fees and case costs; and

e.        Such further relief as justice requires or the law allows.


Respectfully submitted this 21st day of April 2025.

KILLMER LANE, LLP

s/ David A. Lane_____
David A. Lane
Liana Orshan
1543 Champa Street, Ste. 400
Denver, CO 80202
303-571-1000
303-571-1001 - fax
dlane@killmerlane.com
lorshan@killmerlane.com

**CERTIFICATE OF REVIEW**

This is to certify that undersigned counsel has conferred, pursuant to Colorado statutes,

with a physician who has expertise in the areas of the negligence alleged in the captioned case;

that under section 13-64-401, C.R.S., such physician is substantially familiar with the applicable

standards of care and practice as they relate to the act(s) and/or omissions(s) that are the subject

of the alleged negligence; and that this professional has reviewed the known facts, including

such records, documents, and other materials as he has found to be relevant to the allegations of

negligent acts and omissions and has concluded that Plaintiff's claims do not lack substantial

justification within the meaning of section 13-17-302(4), C.R.S.

KILLMER LANE, LLP

s/ David A. Lane_____

13

David A. Lane
Liana Orshan
1543 Champa Street, Suite 400
Denver, Colorado 80202
303-571-1000
303-571-1001 - fax
dlane@killmerlane.com
lorshan@killmerlane.com

ATTORNEYS FOR PLAINTIFF

14